UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:

John Raymond Freeman,

    Debtor.

Case No. 17-40799-JJR-7

Promaxx Performance Products, LLC,

    Plaintiff,

v.

John Raymond Freeman,

    Defendant.

AP No. 17-40032-JJR

## MEMORANDUM OPINION

John Raymond Freeman ("Freeman") filed a petition for relief under chapter 7 of the Bankruptcy Code[1] and scheduled Promaxx Performance Products, LLC ("Promaxx") as one of his creditors. Promaxx filed this adversary proceeding claiming the debt owing by Freeman should not be discharged pursuant to § 523(a)(4) because it arose from Freeman's larceny; and pursuant to § 523(a)(6) because it arose from Freeman's willful and malicious injury to Promaxx's property. Code § 523(a)(4) provides that a discharge under § 727 does not discharge an individual debtor from a debt for "larceny" and § 523(a)(6) provides an exception to discharge if the debt is one "for willful and malicious injury by the debtor to another entity or the property of another entity."

The federal common law definition of larceny that courts apply under § 523(a)(4) is "the fraudulent taking and carrying away [of] property of another with intent to convert such property

---

[1] 11 U.S.C. § 101, *et seq.*, and herein referred to as the "Code." The symbol "§" is a reference to a section, subsection, or other subdivision of the Code.

to the taker's use without the consent of the owner." *In re Cunningham,* 482 B.R. 444, 447 (Bankr. N.D. Ala. 2012) (*quoting Bankston Motor Homes v. Dennis (Matter of Dennis)*, 444 B.R. 201, 217 (Bankr. N.D. Ala. 2011). Promaxx must therefore establish that Freeman acted with fraudulent intent as a necessary element of a larceny claim. *Id.*

Similarly, whether a conversion is "willful and malicious" is a factual finding. *Kane v. Stewart Tilghman Fox & Bianchi PA (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014). Promaxx must establish that Freeman converted its property and that the conversion was both willful and malicious, by a preponderance of the evidence. *Id.* "Willful" means more than just an intentional act that results in an injury; it means the defendant took actions with the specific intent to cause the injury or knowing the actions were substantially certain to cause the injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998); *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995). "Malicious" by contrast does not require a specific intent to harm, but requires a showing that the actions were "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012) (internal quotation marks and citation omitted).

Promaxx is in the business of reworking used engine components, including engine heads. Brian Thomas Pruitt ("Pruitt"), while employed by Promaxx, stole 15 pair of Chevrolet engine heads (the "Heads"), and using Joyce Lancaster ("Lancaster") as a go-between, sold several pairs to Freeman. At trial, the evidence established that Lancaster was a close friend of both Freeman and Pruitt, although the two men claimed not to know each other. In fact, at one time she was in a romantic relationship with Pruitt and perhaps later, also with Freeman. Lancaster testified that Pruitt asked her to help him sell the Heads. Lancaster also testified that Pruitt told her Promaxx had given him the Heads and maintained that she did not know they were stolen. Pruitt, in contrast,

testified that he told Lancaster the Heads were stolen and that Lancaster lied when she denied knowing they were stolen.

Pruitt testified via deposition. He was incarcerated and not available for the trial. Pruitt stated he was with Lancaster when she telephoned Freeman and told Freeman that Pruitt had stolen Heads for sale at a bargain price. However, Pruitt admitted that he never spoke to Freeman and never met him. Freeman later purchased several pairs of Heads, and Lancaster delivered the Heads to him by driving Pruitt's truck, but Pruitt did not accompany her. As mentioned, although Pruitt and Freeman were both friends of Lancaster, neither had met nor talked on the phone with the other.

Freeman admits he purchased and took possession of several of the Heads, and resold them, and he does not dispute that they belonged to Promaxx, although he stated he did not learn of their theft until long after the purchase and subsequent resale. Thus, Freeman admits he converted Promaxx's property, but for purposes of § 523(a)(6), the court must determine whether Promaxx proved that Freeman did so both willfully and maliciously. This requires the court to determine whether Promaxx carried its burden to prove that Freeman knew the heads were stolen when he made the purchase.[2] If Freeman knew the Heads were stolen and were not Pruitt's property, then

---

[2] "Willful and malicious injury includes willful and malicious conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights." *In re Wolfson,* 56 F.3d 52, 54 (11th Cir. 1995). However, not every technical conversion satisfies the requirement that the defendant's actions be willful and malicious, even if the actions constitute a tort without the required intent to injure. *Id.* (*citing Davis v. Aetna Acc. Co.*, 293 U.S. 328, 332 (1934)). In other words, not every conversion is a willful and malicious conversion. *See, e.g., In re Farr*, 2018 WL 1577934 at *5 (Bankr. N.D. Ga. 2018) (making the point that in light of *Kawaauhau v. Geiger,* 118 S. Ct. 974 (1998), conduct in line with an *intentional* tort is required under § 523(a)(6), so that recklessly or negligently inflicted injuries, including technical conversions, are not "willful and malicious" for purposes of § 523(a)(6) in the absence of the intent to injure).

the conversion was both willful and malicious, as his actions in buying them from Pruitt via Lancaster would necessarily harm Promaxx and would be without just cause or excuse. If Promaxx could prove that knowledge, then Freeman's debt to Promaxx for the value of the converted Heads would not be dischargeable under § 523(a)(6).

In his deposition testimony, Pruitt admitted that when Lancaster called Freeman on the phone and told Freeman the Heads were stolen, he—Pruitt—only heard Lancaster's side of the conversation. Although he was adamant that Freeman was on the other end of that phone call, his testimony regarding the identity of the person to whom Lancaster was talking, and that person's response to what Lancaster said about the Heads, were based totally on what Pruitt overheard Lancaster say on her side of the conversation, and what Lancaster told him about Freeman's response.

Freeman's attorney objected to Pruitt's testimony regarding what Lancaster told Pruitt she told Freeman about the Heads being stolen, and also objected to Pruitt's testimony about what he heard Lancaster, but not Freeman, say on the phone. Counsel argued that Pruitt's testimony was hearsay and should be excluded from the evidence. The court agrees that this testimony was hearsay and there is no applicable exception to the general rule that excludes Pruitt's hearsay testimony. Fed. R. Evid. 802-807.

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Here the declarant's—Lancaster's—alleged statement, as reported by Pruitt in his deposition testimony, regarding what she told Freeman about the Heads was not made at trial, and her statement was offered to prove that Freeman had knowledge the Heads were stolen. This is classic hearsay. Lancaster was available at trial, and did testify, but

she denied knowing the Heads were stolen and denied she told Freeman they were stolen, thus contradicting Pruitt's testimony. Pruitt was not available to testify during trial because he was incarcerated, but at the parties' request, the evidence was left open so they could depose Pruitt and offer his testimony as additional evidence. Thus, Lancaster was never questioned about the inconsistency of what Pruitt alleged she told him and her earlier trial testimony.

Without Pruitt's hearsay testimony, there is insufficient evidence to prove by a preponderance that Freeman acted with fraudulent intent, or that he acted willfully or maliciously, or that he even knew the Heads were stolen property when he purchased them and took them under his control. Accordingly, Promaxx did not met its preponderance-of-the-evidence burden of proving larceny and did not meet its same burden of proving that the conversion of its Heads was a willful and malicious act by Freeman. That said, the court has doubts about Freeman's and Lancaster's testimony. Why did Freeman and Lancaster not question why the Heads were being sold at such a deep discount—they were valued at $1,000 or more per pair, but sold to Freeman for only $250? Why did Lancaster and Freeman not question why Promaxx would give the Heads, valued at several thousands of dollars, to an hourly employee? Because of his experience working on cars, Freeman logically should have recognized the price discrepancy even if Lancaster did not. Nonetheless, according to Freeman he made no profit when he resold the Heads for the same price he paid to obtain them. Finally, why did Freeman not question why Lancaster was delivering the Heads to him in a truck she did not own, and ask why Pruitt, who allegedly owned the Heads, did not accompany her? These lingering questions, while showing this was not a one-sided case, were simply not sufficient to satisfy Promaxx's burden of proof.

Finally, the court found Pruitt's deposition testimony to be credible although in critical part it was inadmissible as hearsay. He was incarcerated for stealing the Heads (and other crimes), and

5

Case 17-40032-JJR    Doc 87    Filed 04/09/19    Entered 04/09/19 15:39:05    Desc Main
Document      Page 5 of 6

he gained no benefit from implicating Freeman and Lancaster.  Whatever consequences Freeman and Lancaster might suffer because of Pruitt's refusal to exonerate them would not shorten or lengthen Pruitt's stay behind bars.  Whatever speculation remains, Promaxx did not meet its burden to establish by a preponderance that Freeman committed larceny nor that he willfully or maliciously converted Promaxx's property.

Based on the above, a separate order will be entered conforming to the findings and conclusions in this opinion, and denying the claims asserted by Promaxx in its complaint.

So done this 9th day of April 2019.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE